Our second case is Cobra Natural Resources v. Federal Mine Safety & Health Review Commission. Mr. Robinson, good to have you here, sir. Thank you. Good morning. We're here to address two issues this morning. The first is whether the Federal Mine Safety & Health Review Commission erred by applying a not frivolously brought evidentiary standard to its determination of whether miner Russell Ratliff and his award of temporary reinstatement should have been told under the Mine Act as a result of an economic reduction in force that subsequently occurred. The second issue is whether it's viewed under the not frivolously brought standard or the preponderance of evidence standard the Commission erred in determining that the ALJ's findings were supported by substantial evidence in the record considered as a whole. In recognition of the make-whole nature of remedies available under the Mine Act, the Commission has long recognized that events such as an economic reduction in force may justify tolling of an award of reinstatement. In Gatlin v. Ken American Resources, a 2009 decision, the Commission unanimously affirmed that that principle applies equally to temporary reinstatement proceedings. How many have a jurisdiction here? We encouraged you folks to file a supplemental brief dealing with this. Nobody paid much attention to it. We did file a supplemental brief. I know you did, but nobody paid much attention to the jurisdictional issues on either side. Your claim in jurisdiction under the Collateral Order Doctrine. That's correct. How does this qualify under the Collateral Order Doctrine? We believe all three of the exceptions under the Collateral Order Doctrine are met. An order falls within the Collateral Order exception when it, one, conclusively determines a disputed question, two, resolves an important question completely separate from the merits of the action, and three, is effectively unreviewable on appeal from a final judgment. It has to be an important issue. We recently held here by an in-bank court that a contractor over in Iraq, being sued by some prisoners there for torture, couldn't raise a law of war defense in a collateral order proceeding. Now, compare the importance of that issue characterized, law of war defense, to the issue you're trying to raise here, a reinstatement, temporary reinstatement of a coal miner, allegedly reported unsafe conditions in the mine. Well, it doesn't apply only to coal miners, Your Honor. It applies to anyone covered by the Mine Act. And the reinstatement provision of the Mine Act exists under Section 105C, which is the Act's nondiscrimination provisions. Increasingly, discrimination claims are being filed under the Mine Act, and subsequent to the UBB disaster, the Secretary is increasingly enforcing the temporary reinstatement provision. That is, it's almost automatic now that if a miner files a 105C complaint, the Secretary is going to file for temporary reinstatement. So it is an issue. So what's the important issue we're trying to get here? The importance of it now. Now, we're talking about collateral orders. They started out with double jeopardy claims back in 1949, where a fellow claimed he'd been acquitted, and the Supreme Court said, in that kind of a situation, he ought to be able to litigate that before he's tried again. That's important. The important issue. That's important because he was acquitted. He claims he was acquitted. Then they applied to the President of the United States on a claim of absolute immunity. Then they applied to governors and sheriffs for qualified immunity and the states for Eleventh Amendment immunity and things like that. But we have also said, and the Supreme Court said, it doesn't even apply to attorney-client privilege claims. It doesn't apply to the disqualification of a lawyer in a civil case. The important issue. It doesn't apply to the disqualification of a criminal defense lawyer in a criminal case. It doesn't apply to a law of war claim in a war situation over in Iraq. So tell me how a temporary reinstatement is more important or important enough, just underline important, is important enough to say we ought to carve out new authority. We don't have any in this circuit. You're asking us to plow new territory where the Supreme Court said this is a narrow type of case, a narrow group of cases. Its application should be modest. They say that again and again. And Justice Souter said in 2006, I think in that digital case, he said, we mean what we have said, sending a message to these courts of appeals. But we don't have any authority in this circuit. Nobody's cited any. You cite a Seventh Circuit case and an Eleventh Circuit case. That's correct. 1990. 1990 Eleventh Circuit case, which came before these Supreme Court cases. Well, the most recent decision was. The most recent, which have just emphasized and emphasized and emphasized to us, be careful about these collateral order appeals. The most recent case to address the issue, Your Honor, was from the Seventh Circuit. That was Vulcan Construction Materials. That's right. And they spent one paragraph just summarizing the three elements. And I think they cited Flanagan, didn't they? Yes. The Supreme Court case of Flanagan, which said there is no collateral order appeal in the disqualification of a criminal defense lawyer. They cited that. But what about this case, this Mohawk case and Hill case that they came up with more recently? The Supreme Court case I'm talking about. We believe that the enforcement of the mine safety provisions is an important enough issue. I agree with you 100%. I'm from West Virginia, too. We believe that. Enforcement of the mine safety laws is absolutely important to coal companies, coal miners, the state, to the public. Enforcement of the law. But we're talking about a temporary reinstatement of the coal miner pending the disposition of the case. Most of these cases also involve, if you win on this appeal, for example, on the collateral order appeal, the guy who had the double jeopardy claim, if he wins, he's not going to be tried. There's going to be no merits. Here, we're going to go to the merits anyway. Or they're going to go to the merits anyway. In the meantime, the miner will be without livelihood. The miner will be without economic support. Which you've already entered into an agreement with. It's an important issue. You've entered into an agreement with. Under this. And haven't even reserved this proceeding. Under this, if the commission had told his temporary reinstatement, that agreement would have been void. It would have voided it immediately. And he would then have been unemployed. He would have been without economic support through the temporary reinstatement agreement. We believe, as the other courts have found, that temporary reinstatement proceedings do fall within the collateral order doctrine. The other courts being? The Secretary of Labor agrees with that decision. The Secretary of Labor, he wants it decided, too. Yeah. I mean, we have that come up quite a bit, where they come in on both sides. They sort of agree to the jurisdiction, and nobody raises the jurisdictional questions, but we have to deal with it. Particularly when the Supreme Court's looked down at us and said, we mean what we said. It's what Justice Souter wrote in that, I think it was in the digital case. We urge the court to find that, in fact, this is. Or the Hill case. Does fall within the collateral order doctrine. Go ahead. Go to your merits. I just want, maybe we'll find out something from the government about this. All right. With regard to temporary reinstatement proceedings and the burden of proof, the commission found in its 2009 Gatlin decision that the rule applies, the principle that tolling is appropriate applies to temporary reinstatement proceedings. And more importantly, the commission in Gatlin outlined the party's evidentiary burdens and the factors the judge is to consider in determining whether an order of temporary reinstatement should be tolled. Specifically, Gatlin and the unanimous commission made it very clear that that issue is governed by the preponderance of the evidentiary. Did you argue here that the commission's burden of proof decision is wrong, that that's the incorrect burden of proof, and or is it that the proceedings up until that point had proceeded under a different burden of proof mechanism and because of that you were treated unfairly? Or is it both arguments? It's both arguments, Your Honor. Yeah. You know, at hearing, we positioned our evidence based on the commission's ruling in Gatlin. And what we were required to prove then under Gatlin is that, proved by preponderance of the evidence only, that Mr. Ratliff would have been included in the November 2012 reduction in force and that his inclusion in that reduction in force was unrelated to his protected activities. What the commission did in this case is turn Gatlin on its proverbial head. They said, no, we're not going to go with your preponderance of the evidence standard and these aren't the elements you even need to look at. They didn't look at them. Instead, they said, we're going to go with this not frivolously brought standard. And the law is clear that an agency cannot simply ignore its own precedent. If it wants to veer from precedent, then it has to give explicit reason to basis. If you got relief here, what would it be? Application of the preponderance of the evidence standard as outlined in Gatlin. And who would do that? This court would do that. Why would we do it as opposed to the commission or an ALJ? Because what we're dealing with here is a conclusion of law that is up to this court to determine. The commission has already, in our view, erred in its turn in making that decision. The ALJ found, in fact, go back to the point below, we argued that the preponderance of the evidence standard applied. The secretary agreed that the preponderance of the evidence standard applied. The administrative law judge, in his decision, applied the preponderance of the evidence standard. And then when we filed the petition for review. Wait a minute. If we agreed with you that the commission's burden of proof was either wrong or was, as you call it, a sharp turn, why wouldn't we just send it back to the commission and tell them to take the cases that was presented to it and decide it under that standard? That is an option for the court. But wouldn't that normally be what we would do in an agency appeal of that? I mean, we don't often get into deciding cases in the first instance. If the court was inclined to remand the case rather than reversing it with directions to the commission that there to apply the preponderance of the evidence standard, we would be comfortable with that. But we feel clearly, as you quoted our brief, this was a sharp turn. And the commission did not overrule Gatlin. It simply failed to follow it. It didn't explain its reasons for departing from precedent. It just made that departure. And it cannot do that. It not only veered off course and its choice of adopting a new evidentiary standard, not only bethuddling, but it's wrong as a matter of law. My time is up. I'll address the merits. Thank you very much. Thank you. Ms. Stephan? Good morning, Your Honors. May it please the court, my name is Nancy Stephan, and I represent the Secretary of Labor. I believe I should start by addressing the court's concerns about jurisdiction and just explaining a little bit why, from the perspective of the Secretary, this is such an important issue. And, of course, this kind of goes to the entire case and why it's so important to uphold the temporary reinstatement provision as it's written. The purpose of the temporary reinstatement provision, of course, is to protect minors' safety and health by encouraging minors to be active in voicing safety concerns when they see them at their workplaces. As this court explained in its mutual mining decision, rank-and-file minors play a key role in effectuating the Secretary's health and safety goals, and individual minors are, in fact, crucial to the Minax enforcement scheme. We also know that Congress recognizes that most minors are not in a position to endure even a brief period of unemployment, and that's why the temporary reinstatement provision requires that minors be immediately reinstated. And that's something that the Commission deals with. You have the power to order a reinstatement, which is what you did here. Precisely. Okay, so why does that have anything to do with us creating new legal principles to carve out a group of cases that ought to come under the collateral order doctrine? Well, to the extent that court's concerned that this is not the type of important issue that would merit review under the collateral order doctrine. Wouldn't it be reviewed under a final judgment? The temporary reinstatement decision probably could not be reviewed. Well, if the coal company lost on the merits and it came back up here, we'd be reviewing the merits ruling. Yes. And this ruling would be moot. It would be. And this would be an entire wasted proceeding. If they end up losing on the merits, then this is an academic exercise, completely academic exercise. In the collateral order cases, they talk about independent of the final thing and it would alleviate the proceeding. If a sheriff has qualified immunity from acting wrongly, he's not going to be tried. There's no trial. And if the fellow in the Cohen case was actually acquitted the first time around, he doesn't have to be tried again, so there's no trial necessary. This is 180 degrees from that. So why is this so important? I mean, when the Supreme Court said you can't review a lawyer getting thrown out of a criminal case on a collateral order appeal, you can't review a Fifth Amendment claim on a collateral order appeal. I mean, this was not an academic exercise for us when the Supreme Court has said in that Hill case, we have meant what we said, although the court has been asked many times to expand the small class, and they put it in quotes, of collateral appealable orders, we have instead kept it narrow and selective in its membership. That's what they said. And there's no authority in the Fourth Circuit on this point, right? Yes, I agree. You both come in here and cite the Eleventh Circuit in 1990, before the Supreme Court said this to us, and you cite the Seventh Circuit last year, which spent one paragraph dealing with the jurisdictional point. That's correct. The Sixth Circuit also, without addressing the issue, did review a temporary reinstatement order also last year. Let me ask you factually. Yes. Let's say there's a merits hearing in this case, and on the merits it's determined that the layoff was appropriate. So the compensation from the time the minor was discharged up until the layoff decision is okay, but he shouldn't have been paid from the layoff date up until the merits hearing time. And obviously he wouldn't be paid after that if the employer prevailed at the merits hearing. At the merits hearing, does the ALJ or the Commission have the authority then to order the minor to pay back what he shouldn't have been paid, or does he get to keep that? There is no provision in the statute or in the Commission's rules for repayment by the minor of those funds. In most cases, or at least the way the statute's contemplated to work, the minor would be employed during that period, so the operator would be benefiting from the minor's services. And, of course, the temporary reinstatement provision reflects a balancing by Congress. As the Eleventh Circuit explained, Congress clearly intended that employers should bear the greater... The award of payment in this case from the layoff date to the merits hearing, assuming the employer prevailed in the merits hearing on that. That's unreviewable on the merits hearing. Yeah, that's correct. The merits hearing addresses a different legal question of whether the layoff... So even though the minor shouldn't have been paid, he gets to keep the money anyway. That is the way the statute's written. That's the burden that Congress thought the operator should bear. And the Congress could have given you power to... or given either you all or the coal company power to take an immediate appeal, too. Wouldn't have left it to the court. They could have put it right in there. I believe that's correct, Your Honor. I suppose you should be lauded for your nobility, but bottom line, it's not in your interest for us to rule that this is an appealable collateral order. Well, I mean, it is our position that the court has jurisdiction, and there could be other cases in which the secretary would want to be able to seek review of a temporary reinstatement order. In other words, unless the complaint is frivolous, there's reinstatement. Why do you want us as a court to be picking and choosing in terms of what ones we're going to say? I'm not sure on your frivolity determination, because that's all it is. You can win on the merits. That's why Congress decided no. As long as this complaint for safety is not frivolous, you stay put. They meant that. It's not a merits decision. You may win, because what Judge Agy was asking about was whether or not reimbursement. But safety is so important that the only stumbling block to keeping your job in the meantime is frivolity. If you win that, that's all. Merits will take care of itself. That's what Congress set forth, and as Judge King has questioned you, but again, why is it in your interest in protecting those things in terms of mind, safety, and the mission to do this, to argue not to forcefully answer or accept our invitation to brief jurisdiction properly? The only answer I can think of is what I've already said. We could lose. In a different sort of case, we could lose the frivolity issue. You could. But were you familiar with this in-bank case that we had? I apologize, Your Honor, I'm not. This was two years ago or maybe a year and a half ago. We had an in-bank case on that rack torture. We called them torture cases, whether they could bring an interlocutory appeal or interlocutory appeals under the collateral order doctrine. And my recollection is, Judge Agy and Judge Gregory may have better memory than me, that the United States government came in and appeared. They were not parties. But the Solicitor General appeared and took the jurisdictional position that we adopted. I mean, that's your government. The Solicitor General of the United States came in in that case. Well, obviously, it's for this Court to decide whether there's jurisdiction based on the applicable precedent. Do you agree, at best, then, it's only the burden? What is the standard in terms of what the burden of proof is? That's the only one that would meet, at best, collateral order, not the issue whether or not there was sufficient evidence as to whether or not this layoff was legitimate. That's certainly fact-bound. It wouldn't meet the collateral order, right? Well, Your Honor's correct that that would not be an issue for this Court to decide. The issue that the Court can decide is the legal standard of whether the correct standard was applied. And as I forget which judge was asking Mr. Robinson about this question, if the Court does find that the Commission applied the wrong legal standard, the proper course of action would be remanded to the agency because this is application of a lot of facts is the type of decision that was entrusted to agency expertise. I'll tell you something more. I found it. At our invitation, this was in the Alshamari case, the Department of Justice, on behalf of the United States, submitted an amicus brief and participated in an oral argument. Therein, the government took the position that we were without jurisdiction to decide these appeals. I mean, again, it is, of course, for the Court to decide whether there's jurisdiction here. All I can do is explain why we believe the issue is important. Well, if we assume for a minute there is jurisdiction going to the burden of proof issue, would we need to decide whether or not the Commission's burden of proof description was the correct one or not? Because certainly up until the time it had been decided, you had disagreed with it. Like nobody had ever heard of it before. That's correct, and that's precisely sort of what explains the evolution of our position in this case. At the time of the hearing, at the temporary reinstatement hearing, this issue had never before come before the Commission. We made the decision at the time that we thought the Gatlin standard for a hearing was going to be applied, and so we argued under that standard that COBRA shouldn't prevail in its tolling argument. The temporary reinstatement hearings, of course, happen very fast. They have to happen within 10 days of being requested, and our interest at that stage was getting Mr. Ratliff reinstated to avoid a chilling effect on other minors in the exercise of safety-protected activity. After the ALJ issued his decision and when the case was appealed to the Commission, we reconsidered the issue and realized that what the ALJ had done was, in fact, incorrect. But you never argued this non-frivolous burden of proof to the Commission? We did not argue that, but that's the decision the Commission came out with, and we believe it's consistent with the statute. Well, the Commission decided that it was the operator's burden of proof, if I'm remembering it correctly, but as I read your brief, you said that you had that burden of proof to show that it was not a frivolous reason. The burden under the non-frivolous standard is always on the Secretary, and I don't believe the Commission put that burden on the operator. I believe what the Commission said was that the Secretary… In other words, temporary commission, temporary reinstatement shall be granted and not told unless the operator shows that the claim that the layoff arose in part is frivolous. Then in your brief, you say temporary reinstatement should be granted if the Secretary can establish a non-frivolous claim. So which burden of proof did you say is supposed to apply, the one the Commission came up with or the one that you cited? Well, I'm not sure we would agree that that's the one the Commission came up with. I recognize that's a quote from the case, so I'm going to have to explain myself. But what the Commission explained, and this is on page four of the opinion, is that what was being analyzed was whether the Secretary had raised a non-frivolous issue, that there was some connection between Mr. Ratliff's protected activity and the layoff. So I believe the line that Your Honor was reading is just kind of another way of explaining the analysis that's going on because what's a little bit unique here about this case is that the Commission was looking at what is effectively COBRA's affirmative defense. Normally, affirmative defenses don't come in at the temporary reinstatement stage, but because they introduced this evidence, the Commission looked at it and determined that it, in fact, did not show what COBRA was asserting it showed. It did not show that the objective, that the layoff criteria were so objective that they could not have been infected by discriminatory animus. So we actually think that what we're arguing and what the Commission said are the same thing, that if the Secretary can make a non-frivolous showing that there's some connection between the protected safety complaints and the layoff, that temporary reinstatement should not be told. That's what we are asking the Court to affirm here. From a factual standpoint, the coal company and the miner here entered into a contract, written contract, where they agreed to pay him, but he didn't have to work, pending resolution by the Commission. What's the impact of that on the merits of this case if we were to get there? Well, that's effectively a settlement agreement. COBRA agreed that they would rather not have him back to work. So does that render this thing moot? I don't think so, because… It doesn't qualify pending resolution of this appeal or effort to appeal. In my recollection, it's pending resolution by the Board, by the Commission. I think because, and this is as Mr. Robinson said, because the reason for that settlement agreement was the ALJs and then the Commission's decision affirming the ALJ, that that agreement could be reconsidered if the Court were to overturn the Commission and find that temporary reinstatement could, in fact, be told. The underlying dispute, if it's a settlement agreement, the underlying dispute's been settled, but you all want this standard of review or burden of proof issue decided, so everybody comes up here and says, you have jurisdiction, tell us what you think. We don't, we're not normally even, if we might have jurisdiction, get in the business of giving out advisory opinions. We have a lot of these opinions that mean something to a lot of people, impact people. A lot of them are hard, but we don't even have to take on the ones that, even if they're hard, it's not going to affect anybody. I do think that if the Commission's decision were overturned and there were a new hearing on reinstatement and on tolling of temporary reinstatement, then that settlement agreement could be reconsidered. It was entered into in light of the fact that COBRA was required by the ALJ to offer Mr. Ratliff reinstatement. I think I'll speak just a little bit about the difference between the Commission's decision in Gatlin and the Commission's decision in this case, because that's the crux of COBRA's argument. The key difference between the decision in Gatlin and the decision in this case is that in Gatlin, the minor had already been temporarily reinstated, so the statutory mandate that so long as the complaint's not frivolous, the minor be provided with employment was already satisfied. And what the Commission said in Gatlin was that there could be an additional hearing at which the operator could show by a preponderance of the evidence that the layoff was entirely unrelated to protected activity. In this case, the issue was raised at the temporary reinstatement hearing itself, which is before the Secretary has any opportunity to conduct discovery into the basis for the assertion. And so the Commission correctly held that the only way this can be considered at the temporary reinstatement phase before the minor's back to work is under the non-frivolous standard in the statute. And so as the cases on this rule about agencies changing their decisions explain, so long as the court can see the difference between the two decisions and can discern the path that the agency took, it's not going to be a basis for overturning the agency's decision. I can see if I have any additional points. I don't think I have anything else to address if the court has no further questions. I would just reiterate that this is an important safety matter, that the issue here is whether minors will feel free to speak up about unsafe conditions at underground coal mines when they see them. If COBRA is successful in carving out an exception to the temporary reinstatement provision, the exception that COBRA is seeking, mine operators will routinely be able to avoid temporary reinstatement simply by arguing before the Secretary has the opportunity to conduct discovery that the minor would have been included in a layoff based on criteria that the— The temporary reinstatement hearing simply doesn't contemplate discovery. It just happens too fast. It happens 10 days after it's been requested. The Commission did provide COBRA with the opportunity for an intermediate hearing. The Commission said that an ALJ may offer the opportunity for a hearing under the evidentiary standards that COBRA is requesting, the standard that it is now claiming it was denied the opportunity to have, but that this has to happen after an opportunity for discovery so that the Secretary can have the opportunity to rebut the claim. COBRA didn't ask for such a hearing in this case. They didn't avail themselves of that opportunity the Commission offered. Instead, they came here and requested essentially an exception to the temporary reinstatement requirement. If Mr. Ratliff isn't reinstated, the message to minors at COBRA, of course, is that they should stay silent in the face of safety concerns or risk facing months of— But he has been reinstated. He has been economically reinstated. That's the settlement agreement we were talking about earlier. Yeah, and that's essential to the Secretary's health and safety goals, and so we respectfully urge the COBRA Commission— You're not satisfied with the economic reinstatement? Oh, we are. It was— Okay. Absolutely. The economic reinstatement happened. So I say he's been reinstated. You agree with that? Exactly. He has been reinstated. Yes. Okay. Thank you, Your Honors. Thank you. Mr. Robinson? So the execution of the settlement agreement, has that mooted this appeal? No, Your Honor, and I disagree with phrasing it or calling it a settlement agreement. It was a forced situation where we believe erroneously COBRA was required by the ALJ to put Mr. Ratliff back to work. Mr. Ratliff had, in our view—and this is in the record—been a bad actor, and the company did not want him back on the property where all the other employees knew he had been a bad actor, and here he is back. So the company was willing to enter into an agreement where, okay, we'll pay him, but we don't want him back on the property. But it does not moot the issue. The agreement specifically has a provision in it that the agreement will be terminated upon any determination by an ALJ or by the Commission that he is no longer entitled to reinstate— It doesn't mention this proceeding. If this Court rules— It doesn't mention this proceeding. No, sir. But if this Court rules as we ask it to rule, then the Commission—we can go to the Commission then and seek enforcement of this Court's determination that the tolling should have occurred back in November 2012. And you're correct, Judge Agee, that the whole issue here has confused the Party's burdens of proof. The Secretary and the burden as to whether the miner should be reinstated under 105C lies exclusively with the Secretary and is established by regulations which require the Secretary to establish that the complaint, quote, was not frivolously brought. That comes from 29 CFR 44C. COBRA's burden of proof, on the other hand, arises not in connection with the question of whether Mr. Ratliff should be reinstated but the question of whether, as an affirmative defense, the duration of that reinstatement should be limited. And it is under that burden of proof that the Commission unanimously found in Gatlin that that determination is governed by a burden of proof. Now, we're not seeking an exception under the Mine Act here, as Ms. Stephan says. What we're seeking to do is enforce Gatlin. And Gatlin made it clear what our burden was, and the Commission completely ignored that precedent in its determination here. And the idea that we could go back and have an intermediate hearing is a bit of a smoke-and-mirrors idea. The merit proceeding and the temporary reinstatement proceeding are, throughout the course of the case, different. In many cases, including this case, you have different judges. We have Judge Steele in the temporary reinstatement proceeding. We have Judge McCarthy on the merits. We filed a motion with Judge McCarthy about a month ago to toll the temporary reinstatement because there's been another very large reduction in force at the mine. Judge McCarthy, who's the merits judge, refused to hear it. He says, you have to go back and file it again with Judge Steele in the temporary reinstatement proceeding. So the tolling issue always is going to arise during the temporary reinstatement phase. It did in this case. Gatlin was in the temporary reinstatement phase when it was determined. And any time this tolling issue arises, it's going to be a temporary reinstatement phase issue. And you're going to have the judge who dealt with the temporary reinstatement phase in the first instance dealing with the tolling, whether it's simultaneously with the temporary reinstatement hearing or it's an intermediate hearing somewhere down the line. But at no point is the merits judge going to rule on that issue. If the Court has no further questions, I'll stand down. Thank you very much, Mr. Robinson. Thank you. We'll come down in Greek Council and go on to the next case. That's all right.
judges: Robert B. King, Roger L. Gregory, G. Steven Agee